UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CENTRAL DIVISION

- - -

HONORABLE GEORGE P. SCHIAVELLI
UNITED STATES DISTRICT JUDGE

- - -

MYSPACE, INC., PLAINTIFF,

VS. CV 07-08292-GPS(ARGX)

BLUE CHINA GROUP, LTD., ET AL., DEFENDANT.

*DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION*

LOS ANGELES, CALIFORNIA

MONDAY, APRIL 14, 2008

ROSALYN ADAMS, CSR 11794
OFFICIAL COURT REPORTER
100 UNITED STATES COURTHOUSE
312 NORTH SPRING STREET, ROOM 410
LOS ANGELES, CALIFORNIA 90012
(213) 894-2665

APPEARANCES:

ON BEHALF OF PLAINTIFF:

SONNENSCHEIN NATH & ROSENTHAL LLP
BY: DAVID H. STERN
601 SOUTH FIGUEROA STREET
SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 892-5012

SONNENSCHEIN NATH & ROSENTHAL LLP
BY: CHRISTIAN S. GENETSKI
1301 K STREET N.W.
SUITE 600, EAST TOWER
WASHINGTON, D.C. 20005-3364
(202) 408-6463

ON BEHALF OF DEFENDANTS:

LAW OFFICES OF GARY KURTZ
BY: GARY KURTZ
20335 VENTURA BOULEVARD
SUITE 200
WOODLAND HILLS, CALIFORNIA 91364
(818) 884-8400

LOS ANGELES, CALIFORNIA; MONDAY, APRIL 14, 2008; 1:30 P.M.

--000--

THE CLERK: CALLING ITEM NINE, CV 07-8292-GPS(AGRX): *MYSPACE, INC. V. BLUE CHINA GROUP, LTD., ET AL.*

COUNSEL, IF YOU'D PLEASE STATE YOUR APPEARANCES.

MR. KURTZ: GOOD AFTERNOON, YOUR HONOR. GARY KURTZ APPEARING FOR THE DEFENDANTS AND MOVING PARTIES.

MR. STERN: GOOD AFTERNOON, YOUR HONOR. DAVID STERN ON BEHALF OF PLAINTIFF, MYSPACE.

MR. GENETSKI: AND CHRISTIAN GENETSKI, ALSO, ON BEHALF OF PLAINTIFFS, MYSPACE.

THE COURT: HOLD ON ONE MOMENT.

(OFF THE RECORD.)

THE COURT: BACK ON THE RECORD. THE MOTION IS ON FOR DEFENDANT'S, BLUE CHINA GROUP, MOTION TO DISMISS AND MR. WALCZAK'S MOTION TO DISMISS.

THE TENTATIVE IS TO DENY AS TO BLUE CHINA. THE TENTATIVE IS TO GRANT AS TO ALL, ALTHOUGH I MIGHT BE PERSUADED TO ALLOW SOME FURTHER DISCOVERY ON THAT ONE TO SEE IF THERE'S ANYTHING -- FROM WHAT I'VE SEEN THERE'S NOTHING MUCH ON THIS ALTER EGO, BUT I'LL HEAR YOU ON THAT.

GO AHEAD.

MR. KURTZ: THANK YOU, YOUR HONOR. I'M GOING TO ADDRESS, BRIEFLY, THE BLUE CHINA GROUP, VERY BRIEFLY. I THINK IT COMES DOWN TO A MATTER OF WHAT LINE OF CASES THAT THE COURT IS GOING TO FOLLOW, EITHER THE *FACE BOOK* CASE OR THE *VERIZON* CASE --

THE COURT: WHICH I, FRANKLY, FIND FAIRLY PERSUASIVE IN TERMS OF READING IT.

MR. KURTZ: THERE IS NO CONTROLLING AUTHORITY. SO I'M NOT IN A POSITION TO SAY YOU ARE BOUND BY ANY LINE OF AUTHORITY. I DO THINK --

THE COURT: I LIKE IT WHEN THAT HAPPENS.

MR. KURTZ: IF I WERE SITTING IN YOUR SEAT, YOUR HONOR, I WOULD TOO. I FIND MYSELF, HOWEVER, ARGUING THE LOGIC OF THE CASE THAT I LOST IN THE CALIFORNIA COURT OF APPEAL, ARGUING THE OTHER SIDE OF IT, WHICH IS THE JEWISH DEFENSE ORGANIZATION CASE, WHICH CAME DOWN TO AN ISSUE IN THE COURT OF APPEAL WHICH WAS VERY, VERY DIFFERENT THAN THE ISSUE IN THE TRIAL COURT OF WHETHER THE PHYSICAL LOCATION OF THE SERVERS MATTERED TO THE FINDING OF JURISDICTION.

THE COURT: BUT EVEN BEYOND THE SERVERS, ISN'T IT CLEAR THAT -- FIRST OF ALL, THAT IF THE ALLEGATION IS CORRECT THAT THE DEFENDANT WAS SEEKING TO, EFFECTIVELY, ATTACK MYSPACE SPECIFICALLY IN TERMS OF THE -- WHAT WAS THE OTHER SOFTWARE -- TRACK MYSPACE CUSTOMERS AND MYSPACE IS LOCATED IN CALIFORNIA -- LOS ANGELES. SO, CLEARLY, THAT'S WHERE ONE

WOULD EXPECT AND ANTICIPATE THE HARM WOULD BE CAUSED. CERTAINLY, IT MAY BE CAUSED TO OTHERS WHO GOT THESE MESSAGES; BUT IT SEEMS TO ME THAT WAS PRETTY PURPOSEFUL.

MR. KURTZ: YOUR HONOR, THE WAY I READ THE INTERNET JURISDICTIONAL CASES, THE PHYSICAL LOCATION IS NOT AS MEANINGFUL AS THE CYBER LOCATION. AND IN THIS CASE THE HARM, IF THERE IS HARM, AND I DON'T SEE ANY CREDIBLE EVIDENCE OF HARM, MYSPACE HAS TREMENDOUS SPAN. MYSPACE HASN'T INDICATED IN ITS OPPOSITION THAT THERE'S ANYTHING OTHER THAN SPECULATION AS TO THE DECREASED ENJOYMENT BY ITS CUSTOMERS OF ITS PRODUCT. AND WHEN YOU LOOK AT THAT LEVEL OF HARM OR THAT TYPE OF HARM, YOU LOOK AT THE CASE LAW THAT TALKS ABOUT A ATTENUATED HARM, DE MINIMIS HARM. WHERE IS THE PHYSICAL LOCATION OF THE HARM? AND THAT'S CERTAINLY ON THIS RECORD. IT'S NOT IN CALIFORNIA.

THE COURT: AS I UNDERSTAND IT, THERE WAS NO DAMAGE OR INJURY TO THE SERVERS. IT WAS THE USE OF THE -- WELL, CLARIFY. IT MAY BE A LITTLE DIFFERENT THAN SOME OF THE OTHER CASES, AND I UNDERSTAND WHAT MYSPACE IS COMPLAINING ABOUT, WHAT ITS CUSTOMERS HAD TO PUT UP WITH AND, ESSENTIALLY, THE PIRATING OF CUSTOMERS, ADDRESSES, ETCETERA, AND USING THAT TO CONTACT THEIR FRIENDS AND ON AND ON AND ON.

MR. KURTZ: CORRECT, USING IT TO SEND MESSAGES. AND IN THAT CASE -- I MEAN I THINK WE HAVE TO SEPARATE THE POTENTIAL HARM TO MYSPACE AS OPPOSED TO THE HARM TO MYSPACE

MEMBERS. I THINK THERE'S A DEARTH OF AUTHORITY ON ANY HARM TO MYSPACE. IT ISN'T AN ATTACK ON THE SITUATION. WE'RE NOT OVERLOADING THEIR SERVERS. WE'RE JUST USING --

THE COURT: THAT'S WHAT I WAS SUGGESTING. IT'S NOT REALLY SORT OF AN ATTACK ON THE SERVERS. IT'S SORT OF AN ATTACK ON MYSPACE'S REPUTATION AND WHATEVER ELSE, BUSINESS.

MR. KURTZ: AND WHAT WE HAVE IS: WE HAVE NO DECREASE IN MYSPACE MEMBERSHIP, ALLEGED OR PROVEN. WE HAVE NO DECREASE IN REVENUES BY MYSPACE. ALL WE HAVE IS SOME ANECDOTAL EVIDENCE OF LESS THAN A DOZEN MYSPACE MEMBERS LOCATED IN CALIFORNIA OUT OF -- WHAT WAS IT -- 20 MILLION WHO HAD SOME COMPLAINT THAT THEY DON'T LIKE SEEING THESE MESSAGES. THAT, I WOULD SUGGEST TO THE COURT IN TERMS OF HARM IN CALIFORNIA, IS TOO REMOTE TO ATTENUATE TO DE MINIMIS TO SUSTAIN JURISDICTION OVER BLUE CHINA GROUP BECAUSE THE HARM BEING TARGETED TO CALIFORNIA.

AND, IN FACT, WHAT -- IF THERE WAS ANY TARGETING, THERE WAS TARGETING TO SERVERS WHICH COULD HAVE BEEN LOCATED ANYWHERE, JUST HAPPENED TO BE IN CALIFORNIA. AGAIN, IT COMES DOWN TO WHAT LINE OF AUTHORITY THAT THE COURT DEEMS MOST PERSUASIVE. AND I CAN'T SIT HERE AND TELL YOU WITH A STRAIGHT FACE THAT *FACE BOOK* AND THE *VERIZON* CASE FROM THE EAST COAST ARE NOT ON POINT. THEY ARE.

THE COURT: I APPRECIATE YOUR FORTHRIGHTNESS.

MR. KURTZ: I THINK THEY'RE WRONGLY DECIDED. I

THINK THEY'RE DECIDED CONTRARY TO OTHER DECISIONAL AUTHORITIES, PARTICULARLY THE CALIFORNIA AUTHORITIES. BUT THE COURT IS GOING TO RULE IN WHICH WAY -- WHICH LINE OF AUTHORITIES IT FINDS PERSUASIVE. AND I CAN'T DISTINGUISH THEM AND I'M NOT GOING TO PRETEND TO.

SHIFTING OVER TO MR. WALCZAK. THERE IS AN ABSENCE OF AUTHORITY AS TO ANY ACTIVITY OTHER THAN WHAT HE'S ADMITTED TO BEING -- TO MANAGING BLUE CHINA GROUP. BLUE CHINA GROUP DOES A NUMBER OF THINGS THAT ARE IN THE RECORD. THE CHANGE OF SOFTWARE THAT WAS PROMINENT IN THE *EVERTS* CASE (PHONETIC) THAT WAS MENTIONED IN THE COMPLAINT IS A DIFFERENT SET OF SOFTWARE, HAS DIFFERENT -- IT DOES SOMETHING COMPLETELY DIFFERENT.

THERE ARE A LOT OF LEAPS THAT MYSPACE MAKES IN TRYING TO CONNECT DOTS WITHOUT ADMISSIBLE EVIDENCE AGAINST MR. WALCZAK. THE FIRST LEAP IS THAT MICHAEL PETER WALCZAK IS PETER CALL (PHONETIC). AND I'M NOT GOING TO REPRESENT TO THE COURT, FRANKLY, ONE WAY OR THE OTHER ON THAT ISSUE. I'M JUST GOING TO REMIND THE COURT THAT IT IS MYSPACE'S BURDEN TO COME FORWARD WITH PROOF OF THAT CONNECTION. AND THERE IS NO ADMISSIBLE EVIDENCE OTHER THAN THE SPECULATION OF ONE OF ITS EMPLOYEES AGAINST WHICH I'VE LAUNCHED EVIDENCE OBJECTIONS THAT I HOPE THE COURT LOOKS AT AND SUSTAINS.

THE COURT: I HAVE LOOKED AT IT.

MR. KURTZ: THAT'S THE FIRST CONNECTION WHERE

THERE'S AN ABSENCE OF ANY PROOF. AND WITHOUT -- LET'S BRANCH THAT IN TWO DIRECTIONS. IF WE SAY THAT THEY FAILED TO MEET THEIR BURDEN TO CONNECT WALCZAK WITH CALL, THEN NONE OF THE OTHER EVIDENCE RELATING TO MR. CALL IS MEANINGFUL FOR THESE PURPOSES AT ALL. IF WE GLOSS OVER THAT, AND ASSUME FOR THE MOMENT THAT THEY DID CONNECT THAT DOT, WE LOOK AT WHAT EVIDENCE THEY HAVE WITH PETER COLE'S ACTIVITIES.

THE ONLY EVIDENCE THAT THEY PRESENT, AND THERE ARE ADMISSIBILITY ISSUES THAT ARE NOT AS -- FRANKLY, AS OUTSTANDING OR GLARING AS SOME OF THE OTHER CLAIMS IS THAT THERE ARE PUBLIC RECORDS THAT SUGGEST PETER CALL HAS REGISTERED THE URL'S, THE TECHNICAL ACCOUNT, AND THE ADMINISTRATIVE CONTACT FOR THE URL'S OF BLUE CHINA GROUP, IN PARTICULAR THE URL AT ISSUE IN THIS CASE. I WOULD SUGGEST THAT THAT IS NOT EVEN CLOSE TO BEING ENOUGH. SOMEONE CAN REGISTER A URL AND MANAGE THE FINANCES, MANAGE THE OPERATIONS, MANAGE THE DAILY MEETINGS WITHOUT HAVING ANY CONNECTION WHATSOEVER TO THE DAY-TO-DAY ACTIVITIES OF THE ENTITY. AND IT IS MYSPACE'S BURDEN TO DEMONSTRATE, NOT ONLY THAT WALCZAK WAS CALL, BUT THAT CALL DOES ANY OF THE ACTIVITIES AT ISSUE IN THIS LAWSUIT.

BEYOND THAT, IT IS MYSPACE'S BURDEN, IN ORDER TO GAIN DISCOVERY TO BE ABLE TO GO OVER TO HONG KONG AND TALK TO THE GENTLEMAN, TO DEMONSTRATE THAT THERE'S EVIDENCE OF A COLORABLE CLAIM, ACCORDING TO THE WRITINGS OF JUDGE WILSON

ACROSS THE HALL. I WOULD SUGGEST THAT THEY NEED TO PRESENT ADMISSIBLE EVIDENCE TO DEMONSTRATE OR SATISFY THAT COLORABLE CLAIM ELEMENT.

AND IF YOU LOOK CAREFULLY AT WHAT THEIR EMPLOYEE SAYS, THERE IS NOTHING ADMISSIBLE ABOUT ANYTHING THAT MR. WALCZAK DOES, MR. CALL DOES, OTHER THAN REGISTERING THE URL'S. THAT NOT ONLY DOESN'T SATISFY THE REQUIREMENT TO CLAIM JURISDICTION OVER HIM IN THIS COURT, BUT I WOULD SUGGEST TO THIS COURT THAT IT DOESN'T SATISFY THE REQUIREMENT TO TAKE A TRIP OVER TO STAY THEIR MOTION AND TAKE A TRIP OVER TO HONG KONG TO TALK TO THE GENTLEMAN. HOWEVER, I'D LIKE MY CLIENT TO PAY FOR A VACATION IN HONG KONG. I JUST DON'T SEE THAT IN THESE CARDS. UNLESS THE COURT HAS ANY QUESTIONS.

THE COURT: NO. THANK YOU.

COUNSEL.

MR. STERN: YOUR HONOR, I CAN ADDRESS, BRIEFLY, THE BCG ISSUES, BUT I TAKE IT FROM THE OPENING COMMENTS YOU'D PREFER ME TO SPEND TIME ON WALCZAK.

THE COURT: I HAVE NO PREFERENCE. IT'S YOUR ARGUMENT, COUNSEL.

MR. STERN: ON BCG, AS BCG'S COUNSEL HAS FOCUSED ITS ARGUMENT, THAT THE PARTY HAD FOCUSED ON THE PURPOSEFUL DIRECTION PRONG AS A JURISDICTION TEST. THE *FACE BOOK* AND *VERIZON* CASES HAVE BEEN MENTIONED. WE AGREE THAT THEY'RE ON POINT, THAT THEY ARE RIGHTLY DECIDED.

THE COURT: YOU LOVE THOSE, DON'T YOU?

MR. STERN: WE TAKE ISSUE WITH THE NOTION THAT THEY ARE SOMEHOW A DEPARTURE OR THEY REPRESENT ONE LINE OF AUTHORITY, AND THE CASES THAT DEFENDANT HAS CITED ARE A DIFFERENT LINE OF AUTHORITY. THE CASE WAS ARTICULATED FAIRLY WELL THE NOTION THAT UNDER THE OLD EXPRESS AIMING OR TARGETING LINE OF AUTHORITY IT WAS INTRINSIC IN A CASE WHERE YOU SENT SOMEONE A LETTER, YOU HAD TO HAVE THEIR ADDRESS TO TARGET THEM, BUT IT'S THE TARGETING, NOT THE KNOWLEDGE OF THE ADDRESS, THAT WAS THE KEY FACTOR.

THE FACTS IN *FACE BOOK* ARE ALMOST IDENTICAL TO THE FACTS HERE. THERE'S NO QUESTION THAT THE ENTIRE BUSINESS MODEL OF DEFENDANTS IS TARGETED AT MYSPACE. THEY MARKET EXCLUSIVELY TO USERS OF MYSPACE. THEY WANT THEIR CREDENTIALS.

THE COURT: I READ THAT. THEIR NAME WAS ON THERE. I DO NOTE THE SORT OF EQUIVOCAL "WE'RE NOT AFFILIATED WITH MYSPACE," BUT EVERYTHING ELSE IS MYSPACE FOCUSED, IF YOU'RE CORRECT.

MR. STERN: THERE'S NO SERIOUS QUESTION THAT THEY ARE INDIVIDUALLY TARGETING US. THE CASES THAT DEFENDANTS CITE INVOLVE -- WHERE THE EFFECT TEST DOES NOT SATISFY INVOLVES PASSIVE, NONINTERACTIVE WEB SITES WOULD BE, IF THIS CASE WERE ABOUT SULPHURTECH.COM (PHONETIC) BEING A WEB SITE THAT OFFERED SOME SOFTWARE THAT PEOPLE COULD USE TO DOWNLOAD

MUSIC THAT WAS STREAMING ON SITES LIKE MYSPACE AND OTHERS.

THE COURT: THAT WAS WHAT I WAS TALKING ABOUT IN TERMS OF THE DIFFERENCE BETWEEN FOCUSING ON THE SERVERS AS OPPOSED TO FOCUSING ON WHATEVER BUSINESS LOSSES.

MR. STERN: WE HAVE THE *FACE BOOK* AND THE *VERIZON* CASES THAT ARE PRETTY CLEAR ON POINT. WE DON'T SEE ANY CASES THAT INVOLVE KNOWLEDGE OF WHERE A PLAINTIFF RESIDES, AN INDIVIDUAL OUT TARGETING WHERE JURISDICTION WAS NOT FOUND.

THE ONLY OTHER POINT I WOULD ADDRESS IS DEFENSE COUNSEL HAS TRIED TO DISTINGUISH -- THEY CANDIDLY ADMITTED THEY KNEW MYSPACE WAS IN LOS ANGELES, BUT THEY SAID THEY WEREN'T CERTAIN WHERE THE SERVERS WERE LOCATED. NEITHER *VERIZON* NOR THE *FACE BOOK* CASE DISTINGUISH BETWEEN THE SERVERS. I THINK IT IS A REASONABLE ASSUMPTION, IF YOU'RE TARGETING A COMPANY AND YOU KNOW WHERE THEY ARE, YOU DO NOT RUN A PING OR A TRACE ROUTE ON THE COMPANY SERVERS TO AVOID KNOWLEDGE WHERE THE SERVERS ARE.

THE COURT: WELL, ARE YOU NOW SUGGESTING THAT THEY HAD TO KNOW WHERE THE SERVERS WERE? THAT'S A REQUIREMENT FOR --

MR. STERN: NO, YOUR HONOR. I BELIEVE THE FACT THAT THEY KNOW WHERE -- I DON'T BELIEVE THEY NEEDED TO KNOW UNDER *FACE BOOK* OR *VERIZON* EVEN WHERE MYSPACE'S PRINCIPLE PLACE OF BUSINESS WAS. UNDER THOSE -- IN FACT, *FACE BOOK* THE COURT ACKNOWLEDGES THAT THE DEFENDANT THERE SAID, HAD THEY

KNOWN *FACE BOOK* -- NOT THE SERVER, BUT *FACE BOOK* -- WAS LOCATED IN CALIFORNIA, THEY WOULDN'T HAVE EVEN CHALLENGED. THEY CONCEDED THEY WOULDN'T CHALLENGE JURISDICTION.

AS TO PETER WALCZAK, MICHAEL PETER WALCZAK, YOUR HONOR, WE --

THE COURT: PRETTY THIN ON THAT ONE.

MR. STERN: WE NAMED HIM AS A DEFENDANT BASED ON ALL THE EVIDENCE WE HAD AT THE TIME, AND WE HAVE CONTINUED TO TRY TO PURSUE EVIDENCE THROUGH PUBLICLY AVAILABLE SOURCES. OUR REASON FOR NAMING HIM AND OUR REASON WHY WE BELIEVE HE DOES STILL BELONG IN THIS CASE: WE STILL HAVE, AFTER EXHAUSTIVE INVESTIGATION, NO INDICATION OF ANY OTHER PERSONS INVOLVED IN THIS BUSINESS, OTHER THAN MR. WALCZAK AND THE OTHER TWO INDIVIDUALS WHO RESIDE IN THE UNITED STATES WERE NAMED AND WHO CONSENTED TO JURISDICTION.

MR. WALCZAK HAS A HISTORY, WHEN HE LIVED IN THE UNITED STATES THREE YEARS AGO, BEING INVOLVED IN LONG DISTANCE TELEPHONE BILLING SCAMS. HE HAD REACHED --

THE COURT: WELL, THAT'S NOT AN ISSUE FOR JURISDICTION HERE. WHAT HE DID IN THE PAST -- I'M LOOKING RIGHT NOW AGAIN AT THE DECLARATION. THERE'S NOTHING MUCH THERE, OTHER THAN THE HEARSAY THAT'S BEEN POINTED OUT. TO SAY HE HAD A HISTORY OF DOING THESE KINDS OF THINGS, THAT'S NOT ENOUGH TO GIVE ME JURISDICTION HERE.

MR. STERN: I AGREE. I'M NOT SAYING WE HAVE

JURISDICTION BECAUSE HE USED TO LIVE THERE. COUNSEL MADE A BIG POINT OF THE PETER CALL ALIAS FOR MICHAEL PETER WALCZAK. MY POINT IN THE PRIOR INVOLVEMENT WITH THE LONG DISTANCE BILLING SCAM IS WE BELIEVE AND HAVE INFORMATION TO BELIEVE BASED ON PEOPLE TELLING OUR INVESTIGATORS THAT PETER CALL IS AN ALIAS FOR --

THE COURT: THIS IS ONE OF THE BEST DEFINITIONS OF HEARSAY I'VE EVER HEARD.

MR. STERN: AND WE HAVE -- WE PUT FORTH THE EVIDENCE THAT WE BELIEVE HE IS PETER CALL. WE BELIEVE THAT PETER CALL WAS THE PERSON THAT WE BELIEVE IS MICHAEL PETER WALCZAK, THE ONE CONTRACT THAT DEFENDANTS HAVE OFFERED TO SIGN BY MR. WALCZAK ON BEHALF OF THE COMPANY. THEY'VE ASSERTED THE ARGUMENT THAT THE OFFICERS AND DIRECTORS ARE CONFIDENTIAL AND THEY WON'T NAME THEM. THEY CITE TO WALCZAK'S DECLARATION ON THAT, BUT DOES NOT ACTUALLY SAY THAT. HE DOES SAY THAT HE'S NOT AN OFFICER AND A DIRECTOR.

WE JUST SEE NO EVIDENCE THAT ANYONE ELSE IS INVOLVED WITH THIS COMPANY. WHAT WE WOULD ASK, YOUR HONOR, IS IF WE COULD HAVE 90 DAYS TO CONDUCT DISCOVERY AS AGAINST BCG, IF THEY ARE A DEFENDANT IN THE CASE, TO ASK FOR THE TYPES OF RECORDS AND INFORMATION THAT WOULD ALLOW US TO DETERMINE IF -- WE DO NOT DISPUTE THAT IF MR. WALCZAK IS SIMPLY AN EMPLOYEE OF BCG WHO PERFORMS A NUMBER OF FUNCTIONS AND DIDN'T DIRECTLY AND ACTIVELY PARTICIPATE IN THE

PARTICULAR ACTIONS THAT GIVE RISE TO THIS CASE.

WE AGREE THAT THE CASES ARE CLEAR THAT THERE'S NOT JURISDICTION OVER HIM. OUR BELIEF, BASED ON THE EVIDENCE WE'VE BEEN ABLE TO GATHER FROM PUBLIC SOURCES, IS THAT THAT'S NOT THE CASE. THAT'S -- THAT MR. WALCZAK IS, IN FACT, IF NOT THE ALTER EGO OF BCG, HE IS THE PERSON RESPONSIBLE FOR ENGAGING IN ALL OF THE ACTIVITIES THAT ARE AT ISSUE HERE. I WOULD NOTE ON THAT POINT THAT THE DECLARATION CAME FROM MR. WALCZAK ON BEHALF OF BCG AS TO THEIR LACK OF KNOWLEDGE OF THE LOCATION OF MYSPACE'S SERVERS.

THEIR OWN DECLARATION SUGGESTS THAT MR. WALCZAK IS THE KEY PERSON WHOSE KNOWLEDGE MATTERS IN WHETHER OR NOT THE POINT THAT THEY'RE TRYING TO POSE JURISDICTION THAT THEY DIDN'T KNOW WHERE THE SERVERS WERE, WHICH I BELIEVE SUGGESTS, PARTICULARLY WHEN THEY'RE IN A POSITION TO SUBMIT AN AFFIDAVIT --

THE COURT: WHY DO YOU NEED 90 DAYS? WHY CAN'T YOU SIMPLY GO AHEAD WITH THE DISCOVERY OR TAKE HIS DEPO. HE HAS APPEARED IN THE FORM OF DECLARATION. I DON'T THINK YOU'RE ENTITLED TO A DEPO AT THIS POINT.

MR. STERN: WE CAN HAVE A SHORTER PERIOD, YOUR HONOR. I'M JUST THINKING, IN MY MIND, YOUR HONOR, THE HONG KONG ISSUE.

THE COURT: OKAY. ANYTHING ELSE?

MR. STERN: NOT UNLESS YOUR HONOR HAS QUESTIONS.

THE COURT: THANK YOU.

ANYTHING, BRIEFLY?

MR. KURTZ: BRIEFLY, YOUR HONOR.

THE COURT: VERY BRIEFLY.

MR. KURTZ: FOCUSING ONLY ON MR. WALCZAK. YOUR HONOR, ALL OF THE EVIDENCE AND THE UNSPECIFIED INVESTIGATION THAT THEY'VE DONE PROVES A NEGATIVE, PROVES THAT THEY DON'T KNOW WHO'S INVOLVED IN DOING THIS, BUT --

THE COURT: ARE YOU WILLING TO REVEAL WHO THE BOARD OF DIRECTORS ARE, ETCETERA? THE OFFICERS?

MR. KURTZ: THEY HAVEN'T -- HE HASN'T REVEALED IT TO ME, SO I DON'T KNOW. THERE'S DISCUSSION AND A LEGAL OPINION THAT I'VE SEEN FROM BLUE CHINA GROUP'S COUNSEL IN HONG KONG SUGGESTING THAT THIS IS CONFIDENTIAL.

NOW I WOULD -- IF THE COURT IS INCLINED TO SERIOUSLY WANT TO KNOW THAT AND IF WE CAN HAVE A PROTECTIVE ORDER THAT LIMITS THE USE OF THE INFORMATION, I WOULD STRONGLY RECOMMEND IT. WHAT WE DO KNOW IS THAT HE'S NOT ONE OF THEM.

THE COURT: WHAT'S THE BASIS OF THE CONFIDENTIALITY? IS IT UNDER THE LAW THERE?

MR. KURTZ: FROM WHAT I'M TOLD, IT'S UNDER THE LAW IN HONG KONG. WE'RE TALKING ABOUT CHINA.

THE COURT: I KNOW.

MR. KURTZ: IT'S PART OF --

THE COURT: IT'S AN OLYMPIC YEAR. EVERYTHING IS OPEN. WE'RE NOT CARRYING A TORCH OVER THERE.

GO AHEAD.

MR. KURTZ: I UNDERSTAND, YOUR HONOR. BUT EVEN THE HISTORY -- IF WE GET OVER THE LITTLE HEARSAY PROBLEM OF SUBMITTING AN INTERNET REPORT AS FOR TRUTH OF THE MATTER STATED, THAT WAS TELEPHONE CALLS. THAT'S NOT INTERNET BASED SPAMMING AS MYSPACE IS ALLEGING; THAT'S A COMPLETELY DIFFERENT KIND OF ACTIVITY. BUT WHERE WE NEED TO GET JURISDICTION -- I THINK MYSPACE IS ADMITTING THAT THEY DON'T HAVE SUFFICIENT EVIDENCE TO TIE MR. WALCZAK TO AN ACTIVITY THAT GETS THEM JURISDICTION.

THE QUESTION IS WHETHER THEY HAVE DEMONSTRATED A COLORABLE CLAIM THAT GETS THEM DISCOVERY. AND I WOULD SUBMIT, FRANKLY, THAT THEY HAVEN'T EVEN DONE THAT. THEY HAVE A LOT OF SPECULATION AND WISHES AND HOPES AND NEGATIVES, BUT THERE'S NOTHING ADMISSIBLE THAT TIES WALCZAK TO CALL. AND EVEN IF WE PERMIT DISCOVERY ON THAT ISSUE --

THE COURT: I THINK YOU'RE GETTING REPETITIVE AT THIS POINT. I THINK YOU'VE MADE THAT POINT.

MR. KURTZ: THEN I'LL BE QUIET.

THE COURT: WAY TO TAKE A HINT. GOOD JOB.

THE TENTATIVE AS TO BLUE CHINA GROUP WILL BE THE RULING. I THINK THERE'S SUFFICIENT CONTACT, PURPOSEFUL CONTACT. I THINK ALL OF THE PRONGS ARE MET FOR

REASONABLENESS OR AT LEAST THE BALANCE OF THE PRONGS. IN EVALUATING THAT, I FIND THAT THE BALANCE GOES IN FAVOR OF JURISDICTION.

AS TO WALCZAK, I WANT TO FURTHER CONSIDER WHETHER OR NOT -- I DON'T THINK -- IT CLEARLY IS NOT ENOUGH, IN MY VIEW, TO IMPOSE JURISDICTION ON WHAT I HAVE NOW.

I WILL FURTHER CONSIDER AS TO WHETHER I'M GOING TO ALLOW DISCOVERY OR SIMPLY GRANT THE MOTION AS TO MR. WALCZAK, WITHOUT PREJUDICE, BECAUSE I AM CONCERNED THAT WHAT'S HAPPENING HERE -- WHAT I'M HEARING A LOT FROM THE PLAINTIFF IS "WE BELIEVE, WE BELIEVE, WE BELIEVE."

I DON'T SEE ANY ADMISSIBLE BASIS FOR THAT BELIEF, AND "WE BELIEVE" MAY NOT BE ENOUGH, DEPENDING ON THE CIRCUMSTANCES. AND I WANT TO FURTHER CONSIDER IT TO SEND OUT -- DOING DISCOVERY TO TRY TO PROCURE THE EVIDENCE YOU NEED TO ESTABLISH JURISDICTION. THANK YOU.

MR. KURTZ: YOUR HONOR, ONE MORE QUESTION: MAY I HAVE 30 DAYS TO RESPOND, SUBSTANTIVELY, FOR BLUE CHINA GROUP?

THE COURT: YEAH, 30 DAYS.

MR. KURTZ: TO ANSWER.

THE COURT: TO RESPOND. YOU WANTED 30?

MR. KURTZ: YES, YOUR HONOR.

(END OF PROCEEDINGS.)

--000--

CERTIFICATE OF REPORTER

COUNTY OF LOS ANGELES )
) SS.
STATE OF CALIFORNIA )

I, ROSALYN ADAMS, OFFICIAL COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED: JANUARY 7, 2009

______________________________

ROSALYN ADAMS, CSR 11794
OFFICIAL COURT REPORTER